IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

COALITION FOR FAIR TRADE IN CERAMIC TILE,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

WIN-TEL CERAMICS PRIVATE LTD., ANTIQA MINERALS, and M S INTERNATIONAL, INC.,

Defendant-Intervenors.

Court No. 25-00152

**PUBLIC VERSION**
Redacted Business Proprietary Information (BPI) Contained on Pages 15, 18, 22, 23.

**DEFENDANT-INTERVENORS' CONSOLIDATED RESPONSE TO PLAINTIFF'S MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP
1201 New York Ave., NW, Ste. 650
Washington, DC 20005
Phone: (202) 783-6881

*Counsel to Defendant-Intervenors Win-Tel Ceramics Private Ltd and Antiqa Minerals*

HOGAN LOVELLS CADWALADER US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: (202) 637-5600

*Counsel to Defendant-Intervenor M S International, Inc.*

August 14, 2026

# TABLE OF CONTENTS

Page


STATEMENT PURSUANT TO RULE 56.2 .......... 2

I. Administrative Determination Under Review .......... 2

II. Statement of Issues .......... 2

STATEMENT OF FACTS .......... 3

SUMMARY OF THE ARGUMENT .......... 7

ARGUMENT .......... 8

I. Standard of Review .......... 8

II. The Court Should Disregard Plaintiff's Unexhausted Arguments and Reliance on Materials Outside the Administrative Record .......... 9

A. Plaintiff Failed to Exhaust Its Administrative Remedies for Multiple Arguments .......... 9

B. Plaintiff Improperly Relies on Evidence Outside the Administrative Record .......... 12

III. Commerce's Antiqa Affiliate Cross-Ownership and Attribution Determinations Are Supported by Substantial Evidence and Otherwise Lawful .......... 14

A. Antiqa Provided Comprehensive Affiliation Reporting That Commerce Thoroughly Investigated .......... 14

B. Commerce's *Final Determination* for Antiqa Affiliates Reflects the *Preliminary Determination*, Verification, and Case Briefing, Whereas Plaintiff Failed to Brief Direct Challenges to Commerce's Findings .......... 17

C. Plaintiff's Shivam Arguments Are Procedurally Flawed and Meritless .......... 19

D. Petitioner's Marbonite Arguments Are Procedurally Flawed and Meritless .......... 21

IV. Commerce's Determination Not to Apply AFA to Win-Tel Is Supported by Substantial Evidence And Otherwise Lawful .......... 24

V. Commerce's Application of AFA and Benchmark Calculation for the SGOG Gas for LTAR Program Is Supported by Substantial Evidence and Lawful .......... 29

A. Commerce's AFA Finding Against the GOI Was Genuinely Adverse and Its Benchmark Methodology Was Applied Properly .......... 30

B. Plaintiff's Remaining Benchmark Objections Do Not Warrant Remand .......... 31

Page

VI. Commerce Lawfully Declined to Investigate the Alleged Minerals for LTAR Program ........................................................................................................ 34

CONCLUSION ........................................................................................................ 35

## TABLE OF AUTHORITIES

**CASES** Page

*Alloy Piping Products, Inc. v. United States*,
201 F. Supp. 2d 1267 (Ct. Int'l Trade 2002) .......... 32

*Archer Daniels Midland Co. v. United States*,
917 F. Supp. 2d 1331 (Ct. Int'l Trade 2013) .......... 30

*Atl. Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984).......... 9

*Axiom Resource Mgmt., Inc. v. United States*,
564 F.3d 1374 (Fed. Cir. 2009).......... 12

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
776 F. Supp. 3d 1290 (Ct. Int'l Trade 2025) .......... 24, 27, 29

*Boomerang Tube LLC v. United States*,
856 F.3d 908 (Fed. Cir. 2017).......... 33

*Camau Frozen Seafood Processing Imp. Exp. Corp v. United States*,
880 F. Supp. 2d 1348 (Ct. Int'l Trade 2012) .......... 12

*Camp v. Pitts*,
411 U.S. 138 (1973).......... 12

*Changzhou Trina Solar Energy Co. v. United States*,
195 F. Supp. 3d 1334 (Ct. Int'l Trade 2016) .......... 31

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938).......... 8

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966).......... 8

*Corus Staal BV v. United States*,
502 F.3d 1370 (Fed. Cir. 2007).......... 10, 11

*Dorbest Ltd. v. United States*,
604 F.3d 1363 (Fed. Cir. 2010).......... 10, 11

*Downhole Pipe & Equip. L.P. v. United States*,
776 F.3d 1369 (Fed. Cir. 2015).......... 9

*Essar Steel Ltd. v. United States*,
678 F.3d 1268 (Fed. Cir. 2012).......... 13

Page

*Fine Furniture (Shanghai) Ltd. v. United States*,
748 F.3d 1365 (Fed. Cir. 2014)........................................................................................ 30

*Fischer S.A. Comercio, Industria and Agricultura v. United States*,
Ct. No. 12-00340, 2014 WL 2853909 (Ct. Int'l Trade May 27, 2014) .................................. 11

*Gerber Food (Yunnan) Co. v. United States*,
601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009) ................................................................... 10, 29

*Lucent Techs., Inc. v. Gateway*,
580 F.3d 1301 (Fed. Cir. 2009)........................................................................................ 21

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006).......................................................................................... 9

*Paul Muller Industrie GmbH & Co. v. United States*,
502 F. Supp. 2d 1271 (Ct. Int'l Trade 2007) ........................................................................ 11

*POSCO v. United States*,
977 F.3d 1369 (Fed. Cir. 2020)........................................................................................ 17

*Prime Time Com. LLC v. United States*,
495 F. Supp. 3d 1308 (Ct. Int'l Trade 2021) ........................................................................ 12

*Qingdao Sea-Line Trading Co. v. United States*,
766 F.3d 1378 (Fed. Cir. 2014).......................................................................................... 9

*QVD Food Co. v. United States*,
658 F.3d 1318 (Fed. Cir. 2011).......................................................................................... 9

*QVD Food Co. v. United States*,
721 F. Supp. 2d 1311 (Ct. Int'l Trade 2010) ........................................................................ 12

*Rhone Poulenc, Inc. v. United States*,
899 F.2d 1185 (Fed. Cir. 1990)................................................................................ 11, 22, 30

*Sandvik Steel Co. v. United States*,
164 F.3d 596 (Fed. Cir. 1998).......................................................................................... 10

*Siemens Energy, Inc. v. United States*,
992 F. Supp. 2d 1315 (2014) ............................................................................................. 9

*SmithKline Beecham Corp. v. United States*,
439 F.3d 1312 (Fed. Cir. 2006)..................................................................................... 20, 22

*Sunpreme Inc. v. United States*,
946 F.3d 1300 (Fed. Cir. 2020).......................................................................................... 8

Page

*U.S. Steel Corp. v. United States*,
637 F. Supp. 2d 1199 (Ct. Int'l Trade 2009) ........ 13, 33

*Unemployment Comp. Comm'n of Alaska v. Aragon*,
329 U.S. 143 (1946) ........ 10

*Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*,
256 F. Supp. 3d 1346 (Ct. Int'l Trade 2017) ........ 11

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) ........ 10

**STATUTES**

19 U.S.C. § 1677(5) ........ 30

19 U.S.C. § 1677-1(a) ........ 5

19 U.S.C. § 1677e(a) ........ 24, 26, 29

19 U.S.C. § 1677e(b) ........ 24

19 U.S.C. § 1677f-1(e) ........ 27

19 U.S.C. § 1677m(d) ........ 24, 25, 26, 29

19 U.S.C. § 1677m(e) ........ 24, 26

19 U.S.C. § 1516a(b) ........ 8

28 U.S.C. § 2637(d) ........ 9, 33

**REGULATIONS**

19 C.F.R. § 351.204(c) ........ 27

19 C.F.R. § 351.309(b) ........ 11

19 C.F.R. § 351.311(c) ........ 26

19 C.F.R. § 351.401(f) ........ 14

19 C.F.R. § 351.511(a) ........ 30

19 C.F.R. § 351.523(a) ........ 5, 34

19 C.F.R. § 351.525(b) ........ 15

Page

**ADMINISTRATIVE MATERIALS**

*Ceramic Tile From India: Final Negative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*,
90 Fed. Reg. 17,030 (Dep't Commerce Apr. 23, 2025) .......... 28

*Certain Quartz Surface Products from India: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*,
85 Fed. Reg. 25,398 (Dep't Commerce May 1, 2020) .......... 33

*Countervailing Duties*,
63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998) .......... 28

*Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review; 2017*,
85 Fed. Reg. 14,463 (Dep't Commerce Mar. 12, 2020) .......... 30

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| COALITION FOR FAIR TRADE IN CERAMIC TILE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>WIN-TEL CERAMICS PRIVATE LTD., ANTIQA MINERALS, and M S INTERNATIONAL, INC.,<br><br>Defendant-Intervenors. | Court No. 25-00152<br><br>**PUBLIC VERSION**<br>Redacted Business Proprietary Information (BPI) Contained on Pages 15, 18, 22, 23. |

**DEFENDANT-INTERVENORS' CONSOLIDATED RESPONSE TO PLAINTIFF'S MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Win-Tel Ceramics Private Limited ("Win-Tel"), Antiqa Minerals ("Antiqa"), and M S International, Inc. ("MSI") (collectively, "Defendant-Intervenors"), respectfully submit this consolidated response to the motion for judgment on the agency record filed by Plaintiff, the Coalition for Fair Trade in Ceramic Tile ("Plaintiff" or "Petitioner") on March 10, 2026 ("Pl. Br."). ECF Nos. 31-32. Defendant-Intervenors support the arguments advanced by Defendant, the United States (the "Government"), in its response brief filed on June 15, 2026 ("Gov't Br."), ECF Nos. 33-34, and respectfully request that the Court deny Plaintiff's motion because Commerce's determination in this investigation reflects a reasonable evaluation of the administrative record.

**STATEMENT PURSUANT TO RULE 56.2**

## I. Administrative Determination Under Review

The administrative determination under review is the final determination by the U.S. Department of Commerce ("Commerce" or the "Department") in its countervailing duty ("CVD") investigation of ceramic tile from India. *See Ceramic Tile from India: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, In Part*, 90 Fed. Reg. 17,036 (Dep't Commerce Apr. 23, 2025) ("*Final Determination*") (P.R. 735) and accompanying Issues and Decision Memorandum ("IDM") (P.R. 729). The period of investigation ("POI") is April 1, 2023, through March 31, 2024.

## II. Statement of Issues

1. Whether the Court should decline to consider various of Plaintiff's arguments for which Plaintiff either failed to exhaust its administrative remedies before Commerce during the administrative proceeding or relies on factual information outside the administrative record?

2. Whether Commerce's cross-ownership and attribution analysis with respect to Antiqa is supported by substantial evidence and otherwise lawful?

3. Whether Commerce's determination not to apply adverse facts available ("AFA") to Win-Tel is supported by substantial evidence and otherwise lawful?

4. Whether Commerce's selection of a tier-three benchmark, in part based on the application of AFA to the Government of India ("GOI"), to assess the benefit conferred by the State Government of Gujarat's ("SGOG") provision of gas for less than adequate remuneration ("LTAR") program is supported by substantial evidence and otherwise lawful?

5. Whether Commerce's decision not to initiate on Plaintiff's upstream subsidy allegations is supported by substantial evidence and otherwise lawful?

## STATEMENT OF FACTS[1]

On May 9, 2024, Commerce initiated its CVD investigation covering ceramic tile from India. *Ceramic Tile from India: Initiation of Countervailing Duty Investigation*, 89 Fed. Reg. 42,841 (Dep't Commerce May 16, 2024) ("*Initiation Notice*") (P.R. 324). Commerce's CVD investigation included initial consideration of the SGOG's provision of gas for LTAR. CVD Initiation Checklist at 25 (May 13, 2024) (P.R. 319; C.R. 40). Following initiation, Commerce selected Antiqa and Win-Tel as mandatory respondents. Respondent Selection Memorandum (June 13, 2024) (P.R. 372; C.R. 46).

On June 14, 2024, Commerce issued initial questionnaires to the GOI, Antiqa, and Win-Tel. Commerce's Initial Questionnaire at 1 (June 14, 2024) (P.R. 373). Section II of the questionnaire included questions to the GOI regarding the SGOG gas for LTAR program. *Id.* at II–18-20. Section III of the questionnaire requested information from both Antiqa and Win-Tel about affiliated companies, including "complete responses for certain 'cross-owned' affiliated companies." *Id.* at III–2. On August 26, 2024, the mandatory respondents submitted benchmark data proposing world market prices for natural gas based on UN Comtrade data. Respondents' Benchmark Submission (Aug. 26, 2024) (P.R. 528-31). On September 5, 2024, Plaintiff submitted rebuttal comments and factual information arguing that Antiqa and Win-Tel's approach of using gaseous natural gas for benchmark valuation was flawed, and that Commerce should instead use Plaintiff's proposed benchmark based on world prices for liquefied natural gas ("LNG"). Petitioner's Rebuttal Benchmark Comments at Ex. 1 (Sept. 5, 2024) (P.R. 599).

[1] In addition to providing a general overview of the proceedings, Defendant-Intervenors adopt the statement of facts in the Government's response brief. Additional facts relevant to Defendant-Intervenors' arguments are discussed in the context of the arguments below.

On September 27, 2024, Commerce published its affirmative Preliminary Determination. *Ceramic Tile from India: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination with the Final Antidumping Duty Determination*, 89 Fed. Reg. 79,245 (Dep't Commerce Sept. 27, 2024) ("*Preliminary Determination*") (P.R. 646), and accompanying Preliminary Decision Memorandum (P.R. 636) ("PDM"). Commerce preliminarily determined that countervailable subsidies were being provided to producers and exporters of ceramic tile from India, including Antiqa and Win-Tel, during the POI. *Preliminary Determination*, 89 Fed. Reg. at 79,246; PDM at 1. Commerce preliminarily calculated a 3.15 percent subsidy rate for Antiqa, a 3.05 percent subsidy rate for Win-Tel, and a 3.08 percent subsidy rate for "all others." *Preliminary Determination*, 89 Fed. Reg. at 79,246. In the *Preliminary Determination*, Commerce assessed the benefit conferred by the SGOG's provision of gas for LTAR using a tier-three benchmark constructed from UN Comtrade data, with prices from China and Russia removed, and determined that no benefit was conferred to the mandatory respondents. PDM at 17-18, 30.

In December 2024, Commerce conducted verification of information submitted in the investigation by the GOI, Antiqa, and Win-Tel, in accordance with 19 U.S.C. § 1677m(i). Antiqa Verification Report (Feb. 13, 2025) (P.R. 692; C.R. 539); Win-Tel Verification Report (Feb. 13, 2025) (P.R. 693; C.R. 540); GOI Verification Report (Feb. 14, 2025) (P.R. 694). In connection with verification, Commerce sought additional information regarding Antiqa's relationship to an affiliate that did not export subject merchandise during the POI, Antique Marbonite P. Ltd. ("Marbonite"). Antiqa Verification Report at 5.

On November 22, 2024, Plaintiff filed upstream subsidy allegations, including for an alleged Minerals for LTAR program. Petitioner's Upstream Subsidy Allegation (Nov. 22, 2024)

(P.R. 660; C.R. 449-54) ("Upstream Allegation"). On February 12, 2025, Commerce declined to initiate on the allegations because Plaintiff failed to allege the necessary elements of an upstream subsidy, did not provide a reasonable basis to believe or suspect that an upstream subsidy was being provided to the manufacturer of the ceramic tile inputs, and did not provide readily available information to support its allegations under 19 U.S.C. § 1677-1(a)(1) and 19 C.F.R. § 351.523(a)(1). Commerce's New Subsidy Allegation Memorandum at 3-6 (Feb. 12, 2025) ("NSA Memo") (P.R. 691; C.R. 538).

Ahead of Commerce's *Final Determination*, Plaintiff filed its administrative case brief on February 26, 2025, exceeding 80 pages and raising myriad arguments challenging Commerce's *Preliminary Determination*. Petitioner's Case Brief (Feb. 26, 2025) (P.R. 704; C.R. 543). First, Plaintiff argued that Commerce mishandled the application of AFA with respect to the SGOG's provision of gas for LTAR, contending that Commerce's methodology—declaring India's domestic gas market distorted and resorting to a tier-three benchmark based on UN Comtrade world export prices—rewarded the GOI's non-cooperation by resulting in a finding of no benefit, and that Commerce must use record information to arrive at a subsidy rate greater than zero. *Id.* at 14-21. Second, Plaintiff argued that Commerce should apply total AFA to Antiqa based on allegedly withheld information regarding affiliates that should be considered cross-owned, including Marbonite and Shivam Enterprises ("Shivam") (though the case brief did not mention unaffiliated producer Luxgres Ceramica LLP ("Luxgres")). *Id.* at 22-56. Third, Plaintiff argued that Commerce should apply total AFA to Win-Tel for its alleged failure to cooperate with respect to its affiliate reporting, asserting that Win-Tel failed to submit required questionnaire responses for cross-owned affiliates and that Win-Tel and its unaffiliated supplier, Neelson Porselano LLP ("Neelson"), failed to report ownership changes during the average useful life ("AUL") period,

preventing proper attribution of subsidies. *Id.* at 62-72. Fourth, Plaintiff argued that Commerce erred in declining to initiate on Plaintiff's upstream subsidy allegations, contending that Commerce mischaracterized the allegations as direct subsidies to the mandatory respondents when they were in fact upstream subsidies to input suppliers. *Id.* at 76-81.

On March 10, 2025, Defendant-Intervenors rebutted the arguments in Plaintiff's brief. Joint Rebuttal Brief of Win-Tel and Antiqa (Mar. 10, 2025) (P.R. 719; C.R. 544) ("Rebuttal Brief"); Letter in Lieu of Rebuttal Brief of M S International, Inc. (Mar. 10, 2025) (P.R. 718).

On April 23, 2025, Commerce published the *Final Determination*, in which it declined to apply AFA to either Antiqa or Win-Tel. For Antiqa, Commerce maintained its preliminary cross-ownership and attribution analyses, as described in the *Preliminary Determination*. IDM at 15. Commerce additionally determined that Marbonite was not cross-owned with Antiqa because Antiqa could not control the assets of Marbonite in essentially the same manner as its own. *Id.* at Cmt. 2B. Commerce also declined to apply AFA to Win-Tel for its affiliation reporting. *Id.* at Cmts. 1, 3A, 3B, 3C, and 3D. Commerce continued its use of a tier-three benchmark for the SGOG natural gas for LTAR program, but made certain changes in part based on Plaintiff's arguments. *Id.* at 9, Cmt. 4. Commerce likewise maintained its determination not to initiate on the upstream subsidy allegations. *Id.* at Cmt. 11. The *Final Determination* calculated a 3.45 percent subsidy rate for Antiqa, a 3.06 percent subsidy rate for Win-Tel, and a 3.18 percent subsidy rate for "All Others." 90 Fed. Reg. at 17,037.

On April 28, 2025, Plaintiff filed ministerial error comments arguing that Commerce should revise the conversion rate used for certain export prices in the UN Comtrade data. Petitioner's Ministerial Error Comments (Apr. 28, 2025) (P.R. 737). On May 14, 2025, Commerce responded, finding Plaintiff's allegation to be methodological in nature and not a ministerial error,

making no changes to the *Final Determination*. Ministerial Error Memorandum (May 14, 2025) (P.R. 745). Following an affirmative injury determination by the U.S. International Trade Commission, Commerce published a CVD order. *Ceramic Tile from India: Countervailing Duty Order*, 90 Fed. Reg. 25,234 (Dep't Commerce June 16, 2025) (P.R. 748).

Plaintiff subsequently commenced this action, and the Court granted Defendant-Intervenors' motions to intervene. ECF Nos. 1, 23.

## SUMMARY OF THE ARGUMENT

None of Plaintiff's claims provides a basis for remand or reversal.

*First*, multiple of Plaintiff's arguments suffer from procedural flaws. Specifically, Plaintiff failed to exhaust its administrative remedies with respect to numerous aspects of its claims. This deprived Commerce and Defendant-Intervenors of the opportunity to address Plaintiff's arguments in the first instance, and they are therefore forfeited. Likewise, Commerce as required by law correctly rejected Plaintiff's reliance on evidence outside the administrative record, consisting of information from a separate CVD investigation involving different merchandise and respondents.

*Second*, Commerce's findings for Antiqa affiliates Shivam and Marbonite are supported by substantial evidence and otherwise lawful. Antiqa provided comprehensive reporting of its myriad affiliates, which Commerce thoroughly investigated. After Commerce preliminarily declined either to attribute Shivam subsidies to Antiqa or to find cross-ownership with Marbonite, Plaintiff briefed only that AFA should be applied to Antiqa for alleged misreporting of its affiliates. Plaintiff thereby failed to exhaust and/or lawfully develop its challenges to Commerce findings. Regardless, Plaintiff's claims are meritless because Commerce reasonably determined that attribution to Antiqa was not proper for either Shivam or Marbonite under the applicable criteria.

*Third*, Commerce properly determined not to apply AFA to Win-Tel given its findings that Win-Tel had fully cooperated in the proceeding and that Commerce never issued Win-Tel a deficiency questionnaire concerning the issues that Plaintiff now raises as alleged reporting deficiencies. As a consequence, beyond the fact that the Government thoroughly refutes Plaintiff's allegations, it would be both inappropriate and unlawful for Commerce to apply AFA now.

*Fourth*, Commerce reasonably applied its AFA and benchmark practices with respect to the SGOG gas for LTAR program. As courts have repeatedly held, the mere fact that Commerce applied AFA to the GOI does not mandate that it find subsidization of the cooperating respondents in faithfully applying its benchmark hierarchy. That is particularly so here when Plaintiff's preferred benchmark pertains to a LNG product that the respondents did not even use.

*Finally*, Commerce lawfully declined to initiate a subsidy investigation on the Minerals for LTAR upstream subsidy allegation because it did not constitute an upstream allegation as claimed.

## ARGUMENT

### I. Standard of Review

The court sustains Commerce's final determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law{.}" 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citation omitted). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *see Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308-09 (Fed. Cir. 2020). "It is not for this court on appeal to reweigh the evidence or to reconsider questions of fact anew."

*Downhole Pipe & Equip. L.P. v. United States*, 776 F.3d 1369, 1376-77 (Fed. Cir. 2015) (citation omitted). Judicial review is also "limited to the record before Commerce," *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1385 (Fed. Cir. 2014), and "the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (citations and brackets omitted).

A party disputing Commerce's determination under the substantial evidence standard thus "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted), and this Court sustains a determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from it. *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Further, Commerce "need not address every piece of evidence presented by the parties" because "absent a showing to the contrary, the court presumes that {Commerce} has considered all of the record evidence." *Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315, 1324 (2014) (citations omitted).

## II. The Court Should Disregard Plaintiff's Unexhausted Arguments and Reliance on Materials Outside the Administrative Record

Defendant-Intervenors agree with the Government that Plaintiff has forfeited multiple arguments that Plaintiff raises in its opening brief because it failed to raise the arguments before Commerce. *See*, *e.g.*, Gov't Br. at 20, 25 n.5, 34-36, 41-43. We write separately to provide a more thorough discussion of exhaustion jurisprudence and to highlight Plaintiff's similarly improper reliance on non-record evidence in connection with its arguments.

### A. Plaintiff Failed to Exhaust Its Administrative Remedies for Multiple Arguments

Congress, in 28 U.S.C. § 2637(d), mandated that this Court "shall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's CVD

determinations. The exhaustion doctrine provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (citation omitted). Requiring exhaustion both protects agency authority and promotes judicial efficiency. *See Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007).

It is thus well-settled that "{a} reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the {agency} of an opportunity to consider the matter, make its ruling, and state the reason for its action." *Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1379 (Ct. Int'l Trade 2009) (quoting *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946)). "{S}imple fairness," moreover, "requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (citation omitted).

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has explained that the statute demonstrates "a congressional intent that, absent a strong contrary reason, ***the court should insist that parties exhaust their remedies before the pertinent administrative agencies***." *Corus Staal*, 502 F.3d at 1379 (emphasis added). Thus, this Court generally takes a "***strict view***" of the exhaustion requirement in trade cases. *Id*. (emphasis added); *see also*, *e.g.*, *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013).

Moreover, Commerce's regulations directly address instances in which a party fails to raise an issue properly before Commerce. They specify that, in making its final determination, Commerce will only consider "written arguments in case or rebuttal briefs filed within the time

limits." 19 C.F.R. § 351.309(b)(1). They also state that a party's case brief "must present ***all arguments that continue in the submitter's view to be relevant*** to {Commerce's} final determination or final results, including any arguments presented before the date of publication of the preliminary determination{.}" 19 C.F.R. § 351.309(c)(2) (emphasis added); *see also Dorbest*, 604 F.3d at 1375 ("Commerce regulations require the presentation of all issues and arguments in a party's administrative case brief"); *Fischer S.A. Comercio, Industria and Agricultura v. United States*, Ct. No. 12-00340, 2014 WL 2853909, at *4-5 (Ct. Int'l Trade May 27, 2014) (plaintiff failed to exhaust administrative remedies by not raising issue in its case brief).

Because Commerce's regulations expressly address the exhaustion requirement in the context of challenges to determinations in AD/CVD investigations, the Federal Circuit has held that "{t}he exhaustion requirement in this context is therefore not simply a creature of court decision, as is sometimes the case, but is a requirement explicitly imposed by the agency as a prerequisite to judicial review." *Corus Staal*, 502 F.3d at 1379. Equally significantly, the Federal Circuit has held that a party's obligation to exhaust its administrative remedies in proceedings before Commerce applies both to broad issues and arguments related to those issues. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*, 256 F. Supp. 3d 1346, 1356 (Ct. Int'l Trade 2017); *Paul Muller Industrie GmbH & Co. v. United States*, 502 F. Supp. 2d 1271, 1275 (Ct. Int'l Trade 2007) (holding that, when a party raises a general issue, but fails to incorporate a specific argument relating to the same issue, it fails to exhaust administrative remedies with respect to that argument).

Here, Plaintiff failed to exhaust various arguments, including aspects of its arguments concerning Antiqa, Win-Tel, and the SGOG natural gas for LTAR program. *See*, *e.g.*, Gov't Br. at 20, 25 n.5, 34-36, 41-43; Section III.B-D, *infra*. As a result, Commerce was deprived of the

opportunity to address these claims in the first instance and to make corresponding findings in its determination before this Court. This Court rejects attempts to raise new or reframed arguments on judicial review that were not clearly presented to Commerce. *E.g., QVD Food Co. v. United States*, 721 F. Supp. 2d 1311, 1320 (Ct. Int'l Trade 2010) (holding that the time for a party to raise its new arguments concerning surrogate data was in its administrative case brief because the surrogate data issue "was squarely in play"); *Camau Frozen Seafood Processing Imp. Exp. Corp v. United States*, 880 F. Supp. 2d 1348, 1355 (Ct. Int'l Trade 2012) (although party challenged surrogate country selection, it "never argued that one country was more economically comparable to Vietnam than the other"); *Prime Time Com. LLC v. United States*, 495 F. Supp. 3d 1308, 1314 (Ct. Int'l Trade 2021) (party's "prior attempts" to raise issue did not excuse failure to exhaust), *aff'd*, No. 2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022).

Nor, as the Government rightly explains, do any of the limited exceptions to the exhaustion doctrine apply here. *See* Gov't Br. at 35-36. Accordingly, Plaintiff may not raise its unexhausted arguments *de novo* before the Court. We highlight arguments that are not exhausted as they arise in the discussion below.

### B. Plaintiff Improperly Relies on Evidence Outside the Administrative Record

Plaintiff's attribution arguments with respect to Antiqa and Marbonite improperly rely on evidence outside the administrative record. Judicial review is confined to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Axiom Resource Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom,* 564 F.3d at 1380 (citation omitted). Limiting review to

the agency record also furthers important efficiency and finality considerations. *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277 (Fed. Cir. 2012) ("To allow constant reopening and supplementation of the record would lead to inefficiency and delay in finality.").

Here, Plaintiff's attribution arguments with respect to Antiqa and Marbonite rest on precisely the type of extra-record evidence that judicial review forbids. Plaintiff urges the Court to overturn Commerce's determination by relying on record information from the 2019 CVD investigation of *Quartz Surface Products from India*—an entirely different proceeding involving different merchandise, respondents, and record evidence (and in which Marbonite was the mandatory respondent)—to argue that Marbonite should be deemed cross-owned with Antiqa in this investigation. *See* Pl. Br. at 22-23. In its *Final Determination*, Commerce expressly rejected that approach, explaining that each proceeding stands on its own record and that it is statutorily required to base its determinations solely on the record evidence in the relevant proceeding. *See* IDM at 20. It is axiomatic that "each agency determination is *sui generis*, involving a unique combination and interaction of many variables, and therefore a prior administrative determination is not legally binding on other reviews before this court." *U.S. Steel Corp. v. United States*, 637 F. Supp. 2d 1199, 1218 (Ct. Int'l Trade 2009).

Consistent with that principle, Commerce declined to consider information regarding Marbonite's role as a mandatory respondent and exporter in the *Quartz Surface Products from India* investigation because that information was not part of the agency record in the ceramic tile investigation. IDM at 20. Commerce further explained that the factual posture of the two proceedings was materially different: in the quartz investigation, Marbonite produced and exported the subject merchandise, whereas in this investigation Marbonite did not export ceramic tile to the

United States during the POI. *Id.* at 20-21.[2] After confining its analysis to the record evidence properly before it, Commerce reasonably determined that deeming Marbonite cross-owned with Antiqa was not warranted under 19 C.F.R. § 351.525(b). *Id.* at 22. Plaintiff's attempt to circumvent Commerce's record-based findings by importing evidence from another investigation invites precisely the type of *de novo* fact-finding that this Court and the Federal Circuit have repeatedly rejected—and should be rejected again here.

## III. Commerce's Antiqa Affiliate Cross-Ownership and Attribution Determinations Are Supported by Substantial Evidence and Otherwise Lawful

Defendant-Intervenors fully support the Government's defense of Commerce's affiliation findings for Antiqa, Shivam, Luxgres, and Marbonite. Gov. Br. at 23-33. Defendant-Intervenors below provide additional context and support establishing that: (a) Antiqa provided comprehensive affiliation reporting, which Commerce thoroughly investigated; (b) Plaintiff failed to brief direct challenges on Commerce's preliminary Antiqa affiliation findings, instead seeking AFA application; (c) Plaintiff's arguments as to Shivam and Luxgres are procedurally improper and meritless; (d) Plaintiff's arguments as to Marbonite are procedurally improper and meritless.

### A. Antiqa Provided Comprehensive Affiliation Reporting That Commerce Thoroughly Investigated

Antiqa throughout the investigation provided comprehensive reporting of affiliated companies also owned by members of the Kundariya family, with thousands of pages spanning the initial and five supplemental questionnaires. Antiqa in its nearly 500-page initial affiliation response identified its affiliates in painstaking detail and provided extensive explanation regarding

---

2 Plaintiff also purports to identify an inconsistency in Commerce's approach because Commerce relied on *Quartz Surface Products from India* as reflecting its past practice in another context, *see* Pl. Br. at 23 n.3, 40 n.6, but the difference here is that Plaintiff seeks to rely on factual information from that separate proceeding that is simply not on the record here.

affiliates that could be considered cross-owned within the meaning of 19 C.F.R. § 351.525(b)(6). *See* Antiqa's Affiliation Response at 1-28, Exs. 1-5 (July 12, 2024) ("Antiqa's AQR") (P.R. 397-404; C.R. 64-95). This submission featured a list of ***more than 40 affiliates***, the nature of each company's activities, whether they produce subject merchandise, whether they supplied an input, the basis for affiliation, and ***nearly 200 individual owners*** in these companies along with their ownership in other companies. *Id*. at Ex. 3. Antiqa also provided ownership information over the 15-year AUL period for Antiqa and four affiliates: Shivam; Antiqa Ceramic Pvt. Ltd. ("ACPL"); Antiek Vitrified LLP ("AVL"); and Antique Non Woven Pvt Ltd ("ANPL"). *Id*. at Ex. 5.

Antiqa at the outset demonstrated that "***Marbonite should not be considered cross-owned*** with Antiqa or the other responding Kundariya family companies." *Id*. at 13-19, Ex. 3 (emphasis added). Central to this demonstration was an exclusive supply agreement between Marbonite and Prism Johnson Limited ("Prism") (a large publicly-traded company) through which Prism—despite its equal shareholding in Marbonite with Antiqa affiliate Antique Granito Shareholders Trust ("AGST")—exercises significant control over Marbonite's operations. Clause 11 of the supply agreement obligates Marbonite to sell its entire production exclusively to Prism:

**[ ]**

*Id*. at 15, Ex. 3(b).

Antiqa subsequently submitted full CVD questionnaire responses for Antiqa and four affiliates: Shivam; ACPL; AVL; and ANPL. *See* Antiqa CVD Response at 1-112 (Aug. 5, 2024) ("Antiqa's IQR") (P.R. 457-68; C.R. 114-64). Antiqa at that time also submitted a full CVD questionnaire response for Luxgres, an unaffiliated producer that supplied subject merchandise to

Antiqa affiliate Shivam, which Shivam then exported to the United States. *See* Luxgres CVD Response at 1-82 (Aug. 5, 2024) (P.R. 486-90, C.R. 235-48). Antiqa at that time further responded to Commerce's supplemental questionnaire with updated affiliation information. *See* Antiqa First Supplemental CVD Questionnaire Response at 1-7, Revised Ex. 3 (Aug. 5, 2024) ("Antiqa's SQR") (P.R. 470; C.R. 178-79). Antiqa detailed whether each affiliate produced subject merchandise, supplied raw material to an Antiqa Respondent used to produce subject merchandise, received or transferred any subsidy to an Antiqa Respondent, and had a holding or parent company relationship to another affiliate. *Id*. at Revised Ex. 3.

Antiqa thereafter responded to supplemental questionnaires concerning affiliates. *See* Antiqa's Second Supplemental Questionnaire Response at S2-1–7 (Aug. 9, 2024) ("Antiqa's 2SQR") (P.R. 491; C.R. 257); Antiqa's Fourth Supplemental Questionnaire Response at S4-2–15 (Sept. 3, 2024) ("Antiqa's 4SQR") (P.R. 576-84; C.R. 335-44); Antiqa's Fifth Supplemental Questionnaire Response at S5-1 (Sept. 11, 2024), (P.R. 612; C.R. 370-74). These submissions included affiliation information prompted by Petitioner's allegations that certain entities should be considered cross-owned. *See* Antiqa's 4SQR at S4-7 (P.R. 576-84; C.R. 335-344); Petitioner's Comments on Antiqa's 2SQR at 3-6 (Aug. 19, 2024) (P.R. 509-10; C.R. 275). Antiqa established, for example, that Shivam Surface India LLP ("Shivam Surface") "does not have the capacity to produce subject merchandise." Antiqa's 4SQR at S4-8–9, Ex. S4-5–6 (P.R. 576-84; C.R. 335-44). Antiqa subsequently rebutted Petitioner's claims of affiliate misreporting. *See* Antiqa Response to Petitioner Pre-Prelim Comments at 5-15 (Sept. 17, 2024) (P.R. 629; C.R. 409).

Antiqa accordingly went to great lengths to ensure transparency, showing cross-holdings and specifying each individual's relationship to the extended Kundariya family. *See* Antiqa's SQR Revised Ex. 3 (P.R. 470; C.R. 178-79). Commerce asked extensive follow up questions

concerning these affiliates—at Petitioner's prompting. *See, e.g.*, Antiqa's 4SQR at S4-7 (P.R. 576-84; C.R. 335-44). Petitioner thereby misplaces reliance on precedent where "Commerce failed to investigate an appearance of a potential subsidy that was disclosed during the investigation within the Korean government's own questionnaire." Pl. Br. at 19, 21 (quoting *POSCO v. United States*, 977 F.3d 1369, 1378 (Fed. Cir. 2020)). Antiqa's extraordinarily comprehensive affiliation reporting is wholly inapposite to an instance where "Commerce failed to adequately investigate and consider KPX's impact on the Korean electricity market" by focusing exclusively on another Korean entity. *POSCO*, 977 F.3d at 1377. Here by contrast, Commerce thoroughly investigated and considered Antiqa's affiliations.

### B. Commerce's *Final Determination* for Antiqa Affiliates Reflects the *Preliminary Determination*, Verification, and Case Briefing, Whereas Plaintiff Failed to Brief Direct Challenges to Commerce's Findings

In its *Preliminary Determination*, Commerce accepted that Antiqa was not cross-owned with Marbonite and further declined to attribute to Antiqa subsidies received by Shivam or Luxgres, despite Antiqa filing full CVD questionnaire responses for both:

> . . . Antiqa identified Shivam as an additional trading company. However, we preliminarily determine that ***Shivam does not satisfy any of the attribution criteria in 19 CFR 351.525(b)(6)(ii)-(v) because it does not produce subject merchandise, is not a parent or holding company of Antiqa, ACPL, ANPL or AVL (collectively, Antiqa Respondents), did not supply inputs to the Antiqa Respondents during the POI, and has not transferred subsidies to the Antiqa Respondents***. Accordingly, for this preliminary determination, we have not included this affiliate in our analysis. . . . Luxgres is an unaffiliated producer of subject merchandise that exported subject merchandise to the United States through the trading company Shivam during the POI. **We *preliminarily find that Luxgres is not cross-owned with the Antiqa Respondents.***

PDM at 14 (emphases added) (footnotes omitted).

Moreover, Commerce in December 2024 conducted onsite verification of Antiqa in Morbi, India. *See* Antiqa Verification Report at 1 (P.R. 692; C.R. 539). In pre-verification comments, Petitioner raised a host of affiliation concerns, including on Marbonite—but ***did not*** suggest

questions regarding Shivam or Luxgres, for which Commerce preliminarily declined attribution with Antiqa. *See* Petitioner's Pre-Verification Comments for Antiqa at 1-7 (Dec. 6, 2024) (P.R. 666; C.R. 458); PDM at 14. Commerce verified Antiqa's questionnaire responses, with emphasis on affiliation reporting, and made specific findings for Marbonite:

> We asked about the nature of the relationship between Antiqa affiliate {Marbonite} and nonaffiliate Prism . . . We asked whether Marbonite can independently produce and sell Marbonite-manufactured merchandise. Company officials explained that per Marbonite's contract with Prism, ***Prism determines how much merchandise Marbonite produces and completely controls Marbonite's sales***.

Antiqa Verification Report at 5, Ex. VE-3 (P.R. 692; C.R. 539) (emphasis added).

Plaintiff in February 2025 filed its case brief exceeding 80 pages. Petitioner's Case Brief (P.R. 704; C.R. 543). This brief spent more than 25 pages challenging Antiqa affiliation reporting, exclusively in the context of requesting that "the Department . . . apply total AFA to Antiqa for failure to cooperate to the best of its ability in this investigation." *Id*. at 30-56. Plaintiff did not directly contest Commerce's preliminary finding not to attribute Shivam subsidies to Antiqa, and claimed (incorrectly) that "the Department found {Shivam} to be cross-owned with Antiqa." *Id*. at 40. Plaintiff instead alleged misreporting because "Shivam Surface . . . produces ceramic tile and is a cross-owned company" such that "{t}here is evidence demonstrating that Shivam Enterprise may be engaged in ceramic tile production, thereby making Shivam Enterprises a cross-owned producer of subject merchandise" *Id*. at 40, 48. Plaintiff also alleged misreporting for "[ ] . . . a cross-owned owned producer of inputs, and during the POI, it sold a quantity of inputs to Shivam Enterprises, a potential producer of subject merchandise." *Id*. at 41. Luxgres was not mentioned at all in the case brief. *Id*. at 1-82.

Plaintiff further briefed that AFA was warranted for misreporting because "Marbonite is a cross-owned producer of subject merchandise." *Id*. at 36. This allegation, comprising merely two

sentences in Petitioner's Case Brief, was again made in the context of requesting AFA for Antiqa's alleged affiliation misreporting—as opposed to contesting Commerce's findings. *Id*. at 30-36.

Respondents filed their 60-page rebuttal brief less than two weeks after Petitioner's Case Brief, over Plaintiff's opposition to extension. *See* Rebuttal Brief (P.R. 719; C.R. 544); Letter from Barnes & Thornburg to U.S. Department of Commerce (Mar. 5, 2025) (P.R. 709). Antiqa appropriately rebutted Petitioner's request for AFA based on alleged affiliation misreporting, rather than focus on Commerce's preliminary affiliation determinations that had not been directly challenged. *See* Rebuttal Brief at 28-47 (P.R. 719; C.R. 544).

In its *Final Determination*, the Department declined to apply AFA to Antiqa upon making ten specific findings that Antiqa affiliations had been properly reported. *See* IDM at 16-34, Cmt. 2. In the context of rejecting Plaintiff's arguments for AFA, Commerce reaffirmed its preliminary findings for Shivam and Marbonite. *Id*. at Cmts. 2B, 2H, 2I.

### C. Plaintiff's Shivam Arguments Are Procedurally Flawed and Meritless

This important background informs Plaintiff's current arguments concerning Antiqa and Shivam. For example, Plaintiff ***now*** challenges the *Final Determination* for Antiqa because "by failing to incorporate Shivam in its cross-ownership and attribution analysis, Commerce also failed to include Luxgres, a producer of subject merchandise that also supplied Shivam." Pl. Br. at 21. Yet, Luxgres was never mentioned administratively. *See* Petitioner's Case Brief at 1-82. Defendant correctly observes that Plaintiff failed to exhaust administrative remedies regarding Luxgres, *See* Gov't Br. at 20. Beyond its specific claim for Luxgres, Plaintiff further failed the exhaust the larger issue of challenging Commerce's preliminary decision against attribution between Shivam and Antiqa. *See* Pl. Br. 17-21. Indeed, Plaintiff in briefing misunderstood Commerce as having made an affirmative preliminary cross-ownership determination. *See*

Petitioner's Case Brief at 40 ("the Department found {Shivam} to be cross-owned with Antiqa.").

As corrected by Commerce:

> this statement is erroneous because Commerce did not find Shivam Enterprise cross-owned with Antiqa in the *Preliminary Determination*. Indeed, we found that ***Shivam Enterprise is a trading company that does not satisfy any of the attribution criteria*** in 19 CFR 351.525(b)(6)(ii)-(v) because it does not produce ceramic tile, is not a parent or holding company of the Antiqa Respondents, did not supply inputs to the Antiqa Respondents during the POI, and has not transferred subsidies to the Antiqa Respondents.

IDM at 30 (emphasis added).

Notwithstanding its previous focus on applying AFA to Antiqa for alleged misreporting, Plaintiff has abandoned that claim on appeal. *Compare* Petitioner's Case Brief at 30-56 (P.R. 704; C.R. 543) *with* Pl. Br. at 14-27. Requesting AFA is distinct from seeking reversal of Commerce's affiliation findings for Shivam and Luxgres. Consequently, having focused on AFA before Commerce, thereby obfuscating its current claims, Plaintiff in fairness under the exhaustion doctrine should be disallowed from pursuing the claims now. Alternatively, this Court should find Plaintiff's claim regarding Shivam insufficiently developed. Petitioner's Case Brief exceeded 80 pages, with more than 25 pages devoted to seeking AFA for Antiqa affiliation reporting, whereas only a few sentences in the context of an AFA argument raised the concern over Shivam that forms the basis of this appeal. *See* Petitioner's Case Brief at 48-49 (P.R. 704; C.R. 543).[3] The Federal Circuit decades ago affirmed that such undeveloped arguments are waived. *See SmithKline Beecham Corp. v. United States*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("perfunctory" and "skeletal" arguments are waived, especially when the brief presents a large number of other arguments) (citations omitted).

---

[3] Plaintiff also generically briefed that Commerce "should consider attributed subsidies to all cross-owned affiliates within the Antiqa Group during the POI for the final determination." *Id.* at 56.

Nevertheless, Commerce properly declined to find attribution between Antiqa, Shivam, and Luxgres through application of the trading company rule. *See* Gov't Br. at 16-20; IDM at 21, 30-33. Beyond the Government's thorough analysis, Antiqa emphasizes that its filing complete CVD questionnaires for Shivam and Luxgres out of an abundance of caution does not undermine Commerce's findings as Plaintiff claims. *See* Pl. Br. at 17-18. It is axiomatic that Commerce administers the CVD statute and is not obligated to use all data submitted. Further, Petitioner's claim for attribution was based on conjecture: "There is evidence demonstrating that Shivam Enterprises ***may be engaged*** in ceramic tile production." Petitioner's Case Brief at 48 (P.R. 704; C.R. 543) (emphasis added). "It is well established that speculation does not constitute 'substantial evidence.'" *Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301, 1327 (Fed. Cir. 2009).

Substantial evidence here confirms that Shivam—a trading company with no manufacturing facilities—did not produce subject merchandise. *See* Rebuttal Brief at 43 (P.R. 719; C.R. 544); Antiqa's AQR at 6 (P.R. 397-404; C.R. 64-95); Antiqa's IQR at Ex. 4 (P.R. 457-68; C.R. 114-64). Nor do Petitioner's arguments concerning other affiliates named Shivam have merit. Shivam Surface "does not have the capacity to produce subject merchandise." Antiqa's 4SQR at S4-8–9, Ex. S4-5–6 (P.R. 576-84; C.R. 335-44). "Shivam Abrasive is a manufacturer of abrasives that sold abrasives to Shivam Enterprise and ANPL, but did not sell this product to Antiqa or any affiliate that exported ceramic tile to the United States." IDM at 32; Antiqa's AQR at 20-21 (P.R. 397-404; C.R. 64-95). Commerce therefore lawfully declined to find attribution between Antiqa, Shivam, and (by extension) Luxgres. IDM at 30-33.

**D. Petitioner's Marbonite Arguments Are Procedurally Flawed and Meritless**

Plaintiff challenges Commerce's decision not to find cross-ownership between Antiqa and Marbonite, which did not export subject merchandise to the U.S. during the POI. Pl. Br. at 20-25.

This claim suffers from the same defects as the Shivam arguments, having been briefed in the AFA context and accordingly neither exhausted nor sufficiently developed before Commerce. *See* Sections II.A, III.C, *supra*; *SmithKline*, 439 F.3d at 1320. Indeed, Plaintiff devoted only two sentences to this topic in more than 80 pages of briefing. *See* Petitioner's Case Brief at 36 (P.R. 704; C.R. 543). Such "passing reference" to Marbonite constitutes a "skeletal" and "perfunctory" claim that cannot be pursued on appeal. *SmithKline*, 439 F.3d at 1320. While Commerce's *Final Determination* reaffirmed Marbonite not being cross-owned, Antiqa's underlying rebuttal focused on the direct AFA claim by demonstrating the propriety of its affiliation reporting. *See* IDM at 20-22; Rebuttal Brief at 36-38 (P.R. 719; C.R. 544). Under these circumstances, it is unfair and unlawful for Plaintiff now to directly challenge Commerce's affiliation findings for Marbonite.

At minimum, this Court should find that Plaintiff failed to exhaust administrative remedies for its specific evidentiary challenges to the exclusive supply agreement between Marbonite and Prism. *See* Pl. Br. at 26. Plaintiff for the first time contends that the agreement is not necessarily exclusive because it allows for deviation with written notice and because "every page of the supply agreement . . . [

]" and "also a shareholder in the Antiqa entity and a member of the Antiqa Kundariya family." *Id*. Plaintiff failed to exhaust these arguments by not raising them in its case brief. *See* *Rhone Poulenc*, 899 F.2d at 1191 (parties must raise specific arguments, not general issues).

Moreover, Plaintiff's arguments lack merit. *See* Gov. Br. at 20-25. Commerce properly found that the "agreement ***obligates Marbonite to sell its entire production*** exclusively to Prism," and the record evidences that "Marbonite sold all merchandise to Prism." IDM at 21 (emphasis added); Rebuttal Brief at 38 (P.R. 719; C.R. 544); Antiqa's AQR at 13-19 (P.R. 397-404; C.R. 64-

95). Any unused potential for an authorized deviation does not undermine Commerce finding of no cross-ownership with Marbonite. *See* Antiqa Verification Report at 5 (P.R. 692; C.R. 539).

Nor does the identity of the exclusive supply agreement signatory establish cross-ownership. *See* Pl. Br. at 26. The supply agreement is a bilateral commercial agreement between Marbonite and Prism, for which each contracting party necessarily executes the agreement through its duly authorized representative. A Marbonite director signing on behalf of Marbonite merely reflects ordinary corporate authorization to execute contracts on behalf of the company. It does not establish that Antiqa or the Kundariya family could use or direct Marbonite's assets as their own. By Petitioner's logic, that Prism's authorized representative also executed the same agreement would equally "demonstrate" that Prism controlled Marbonite simply, because it signed the agreement. That is not how corporate governance or commercial contracts operate. The identity of the signatories merely confirms that each contracting party executed the agreement through authorized representatives, and does not evidence cross-ownership or control.

Finally, Plaintiff misplaces reliance on *Quartz Surface Products from India*. IDM Cmt. 2B; Gov. Br. at 24-25. Beyond the Government's persuasive explanation, the following facts further refute Plaintiff's argument:

- AGST only appoints the [ ] while Prism Johnson appoints the [ ];
- Marbonite's financial statements are consolidated within those of Prism Johnson, while the AGST financial statements identify AGST's shareholding as "non-controlling"; and
- The exclusive supply agreement was amended in 2023, several years after *Quartz Surface Products from India*.

Rebuttal Brief at 24 (P.R. 719; C.R. 544); Antiqa's AQR at 13-19, Exs. 3(b), 3(c) at 221, 276 (P.R. 397-404; C.R. 64-95). Plaintiff's argument should thus be rejected.

## IV. Commerce's Determination Not to Apply AFA to Win-Tel Is Supported by Substantial Evidence And Otherwise Lawful

Defendant-Intervenors agree with and fully support Commerce's determination not to apply AFA to Win-Tel, and the Government's corresponding response brief, while highlighting several additional points. *See* Gov't Br. at 25-36.

As an initial matter, Defendant-Intervenors highlight that (1) Commerce found as a factual matter that Win-Tel was a cooperative respondent and (2) Commerce did not during the proceeding issue a deficiency questionnaire under 19 U.S.C. § 1677m(d) to Win-Tel on the issues before the Court. Hence, Plaintiff's summary of the applicable legal framework is incomplete. The statute does empower Commerce to apply AFA to a respondent it determines has withheld information that Commerce requested while failing to cooperate to the best of its ability. *See* 19 U.S.C. §§ 1677e(a)-(b). Here, however, Commerce determined and verified that Win-Tel cooperated and ***the statute does not empower*** Commerce to apply AFA to such a respondent. *See id*.

Equally, Plaintiff omits that Commerce's authority to apply the facts otherwise available is "subject to section 1677m(d) of this title…." *Id.* at § 1677e(a). Section 1677m(d) requires that:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) ***shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency*** in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d) (emphasis added); *see also*, *e.g.*, *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 776 F. Supp. 3d 1290, 1308-09 (Ct. Int'l Trade 2025) (holding that Commerce failed to comply with Section 1677m(d) when it did not "specifically point{} out and request{} clarification" of the alleged deficiency) (citations omitted). Moreover, 19 U.S.C. § 1677m(e) states that Commerce "shall not decline to consider information that is submitted by an interested

party and is necessary to the determination but does not meet all the applicable requirements" so long as it meets certain criteria. *See also Id.* at § 1677m(d) (limiting Commerce's ability to disregard Section 1677m(d) curative submissions as "subject to subsection (e)").

Plaintiff's failure to address these requirements is significant because they prohibit Commerce from applying AFA to Win-Tel in light of Win-Tel's cooperation and Commerce's failure to even to issue (let alone reject) a deficiency questionnaire to Win-Tel. Indeed, as the Government emphasizes, Commerce determined that Win-Tel "responded to all of Commerce's requests for information" and "did not fail to provide requested information regarding its affiliations." IDM at 34-35; *see also id.* at 12-15 (stating "we confirmed at verification that the mandatory respondents did not withhold any information that Commerce requested").

Turning to the substance, Plaintiff's first argument in favor of applying AFA to Win-Tel is based on the allegation that Win-Tel's ***unaffiliated*** supplier, Neelson, failed to provide Commerce (through Win-Tel) with complete information about ***Neelson's*** cross-owned affiliates. *See* Pl. Br. at 29-31.[4] The disconnect between this allegation and applying AFA to Win-Tel as a cooperative respondent is clear. Indeed, Plaintiff underscores the issue when it alleges that "***Neelson*** determined that because Win-Tel was the mandatory respondent, and not Neelson, ***it*** {***Neelson***} need not provide a full CVD questionnaire response for its cross-owned affiliates." *Id.* at 30.

Yet, as the Government observes: "Neelson was not selected as the mandatory respondent and was, therefore, not subject to the same requirements as Win-Tel. Rather, Win-Tel submitted questionnaire responses for Neelson as a producer of subject merchandise exported by Win-Tel." Gov't Br. at 29 (citations omitted). Consequently, to the extent that Commerce found Neelson's

[4] Essentially, this argument posits the existence of subsidies two companies removed from Win-Tel that could potentially be attributed to Win-Tel through its unaffiliated supplier Neelson, thereby requiring additional reporting by Neelson.

affiliate reporting insufficient, Sections 1677e(a) and 1677m(d) require that, before applying AFA to Win-Tel, Commerce would have had to inform Win-Tel of a specific deficiency and provide it an opportunity to cure the issue. *See* 19 U.S.C. §§ 1677e(a), 1677m(d); *see also id.* at § 1677m(e) (requiring Commerce generally to use timely information). Having failed to do that, Commerce was correct in concluding that resort to AFA would be inappropriate. *See* IDM at 37.

Moreover, both Commerce and the Government have explained that the issue of whether Neelson's potentially cross-owned affiliates received subsidies was not raised in the Petition, as well as that Neelson's potentially cross-owned affiliates' alleged use of countervailable subsidy programs was not on the record. *See* IDM at 37; Gov't Br. at 28. As a consequence, the issue came to Commerce's attention late in the proceeding. *See id.*[5] Given these circumstances, Commerce reasonably determined under 19 C.F.R. § 351.311(c)(2) that it did not have adequate time to investigate subsidies that may have been received by Neelson's potentially cross-owned affiliates and deferred the issue to a future review. Contrary to Plaintiff's claim that this was improper, it flows directly from the terms of Commerce's regulation. Consequently, although this aspect of Commerce's reasoning is not necessary to sustain its declination to apply AFA to Win-Tel as a cooperative respondent, it further supports Commerce's reasonable determination.

Plaintiff next argues that Commerce should have applied AFA to Win-Tel for failing to provide information that Commerce itself never required. *See* Pl. Br. at 31-33. Specifically, Plaintiff argues that Win-Tel should be penalized for not reporting additional information about unaffiliated suppliers of subject merchandise to Win-Tel and its suppliers Theos Tiles LLP

---

[5] Plaintiff disputes Commerce's characterization, Pl. Br. at 31, but its assertion that information about Neelson's affiliate was on the record is not the same as an allegation about potential subsidies received by Neelson's potentially cross-owned affiliates. *See* Petitioner's Pre-Verification Comments for Win-Tel at 9 (Dec. 13, 2024) (P.R. 671; C.R. 464) (raising request for complete CVD questionnaire responses for Neelson's cross-owned affiliates late in proceeding).

("Theos") and Neelson—exhorting Commerce to examine whether any subsidies were provided to the suppliers of Win-Tel's suppliers, despite the fact that Commerce had lawfully limited its investigation to two mandatory respondents pursuant to 19 U.S.C. § 1677f-1(e)(2) and 19 C.F.R. § 351.204(c). As Commerce explained, however, it "calculated that the sum total merchandise exported by Win-Tel but not produced by Win-Tel (excluding merchandise produced by Theos and Neelson) ***was a negligible amount***{.}" IDM at 38 (emphasis added) (citing Win-Tel, Theos, and Neelson Affiliation Response, Section 1 at Ex. W-1(a) (July 8, 2024) (P.R. 394; C.R. 51) ("Win-Tel's AQR")).[6] Moreover, Commerce explained that "{e}xamining all known exporters or producers would require significant resources for Commerce to analyze each company's corporate structure, financial records, and participation in the alleged subsidy programs on which Commerce has initiated investigation." IDM at 38 (citation omitted).

Ultimately, whether or not Commerce should have extended its investigation to include examination of these third-party suppliers is not before the Court. The fact is Commerce did not do so and never required Win-Tel to provide this information—let alone in a deficiency questionnaire under 19 U.S.C. § 1677m(d). Commerce stated specifically that "we did not require Win-Tel to provide full responses to the Initial Questionnaire for each and every one of the Win-Tel Respondents' identified suppliers." IDM at 39. As a result, it would be wholly inappropriate for this Court to require Commerce to apply AFA to Win-Tel based on alleged non-cooperation for failing to do so. *See Baroque Timber*, 776 F. Supp. 3d at 1308-09.

---

6 Commerce likewise indicated that the export volume data for merchandise produced by other companies compared to the exported merchandise produced by Theos and Neelson was not significant. *See id.* at 38-39; *see also* Win-Tel, Theos, and Neelson Affiliation Response, Section 2 at 2-3, Ex. T-1 and Section 3 at 3, Ex. N-1 (P.R. 394; C.R. 51) (Theos's and Neelson's AQRs). The Government also thoroughly debunks Plaintiff's claims that Commerce improperly relied on the statement that Theos and Neelson only exported subject merchandise to the United States through Win-Tel. *See* Gov't Br. at 32-33 (addressing Pl. Br. at 31-32).

Plaintiff is equally unpersuasive in arguing that Commerce should have penalized Win-Tel for its reporting about a change in its unaffiliated supplier Neelson's minority ownership that occurred outside the POI but during the AUL period for certain subsidies. *See* Pl. Br. 33-34. Again, Commerce ***did not*** issue Win-Tel a deficiency questionnaire on this issue, but merely indicated that Neelson's reporting of the change (submitted through Win-Tel) could have been clearer.[7] *See* IDM at 39. Commerce was clear, however, that it did not "find that this caused subsidies received during the AUL period to be improperly attributed." *Id.* Indeed, Commerce found that "upon review of Neelson's AUL shareholding and directors/partners . . . the information that the petitioner claims to be true in its case brief does not exist on the record." *Id.* at 40 (citing Neelson's AQR at Exs. N-2, N-3, N-4 (P.R. 394; C.R. 51); *cf. Ceramic Tile From India: Final Negative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 17,030 (Dep't Commerce Apr. 23, 2025), at IDM Cmt. 3 (rejecting similar effort to have Win-Tel and Neelson collapsed for antidumping purposes).

Thus—consistent with Win-Tel's reporting—Commerce found that "information on the record, confirmed during verification, supports the mandatory respondents' claim that the Makasana family held the majority stake and control of Neelson throughout the AUL period and POI" such that "cross-ownership between Win-Tel and Neelson did not exist during the AUL period" under 19 C.F.R. § 351.525(b)(6)(vi) and the *CVD Preamble*. *Id.* (citing Win-Tel Verification Report at 6, Ex. VE-6 (P.R. 693; C.R. 540); Rebuttal Brief at 25 (P.R. 719; C.R. 544); *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,401 (Dep't Commerce Nov. 25, 1998)). Moreover, Commerce specifically found that Win-Tel's reporting on the relationship (or lack

---

[7] In this regard, we note that Neelson's AQR was explicit that this change in minority ownership prior to the POI had occurred. *See* Neelson's AQR at 8 n.1 (P.R. 394; C.R. 51).

thereof) between Win-Tel and Neelson "***has not impeded*** our ability to accurately cumulate Neelson's benefits with Win-Tel's benefits." *Id.* at 41 (emphasis added). Under these circumstances, it would be both inappropriate and unlawful for Commerce to apply AFA to Win-Tel. *See* 19 U.S.C. §§ 1677e(a), 1677m(d); *Baroque Timber*, 776 F. Supp. 3d at 1308-09.

Finally, Defendant-Intervenors agree with the Government that Plaintiff has failed to exhaust its administrative remedies with respect to its allegations concerning Win-Tel's affiliation reporting for Bhabha Exports. *See* Gov't Br. at 34-36 (addressing Pl. Br. 34-37). By failing to raise this argument before Commerce, Plaintiff deprived Commerce of the opportunity to address these claims in the first instance and to make corresponding findings or conclusions in the *Final Determination* that is before this Court. *See Gerber Food*, 601 F. Supp. 2d at 1379. Equally, given that Plaintiff entirely failed to raise this issue, it was certainly not the subject of a Commerce deficiency questionnaire providing Win-Tel with required notice before applying facts otherwise available (let alone AFA). *See* 19 U.S.C. §§ 1677e(a), 1677m(d).[8] Consequently, it would be both inappropriate and unlawful for Commerce to apply AFA to Win-Tel under these circumstances.

## V. Commerce's Application of AFA and Benchmark Calculation for the SGOG Gas for LTAR Program Is Supported by Substantial Evidence and Lawful

Plaintiff next challenges Commerce's application of AFA to the GOI and its selection of a tier-three benchmark for the SGOG gas for LTAR program. *See* Pl. Br. at 37-42. Beyond endorsing the Government's refutation of this argument, Defendant-Intervenors—including the fully cooperating mandatory respondents whose benchmark submission Commerce adopted—address below the respondent-focused considerations that further support affirmance.

[8] Further, Plaintiff's arguments appear extremely weak, seeking to manufacture inconsistency in Win-Tel's reporting that Bhabha Exports did not export any subject merchandise to the United States, except for a very small quantity of free samples. *See* Pl. Br. 34-35 (citation omitted). Win-Tel's explicit reporting on this issue—which Commerce did not deem deficient—shows just how minimal these free samples were. *See* Win-Tel's AQR at 4-5 (P.R. 394; C.R. 51).

### A. Commerce's AFA Finding Against the GOI Was Genuinely Adverse and Its Benchmark Methodology Was Applied Properly

Plaintiff's central contention—that Commerce's AFA application "benefitted" the GOI and "removed any future incentive to cooperate," Pl. Br. at 39—misconceives the statutory scheme. The adverse inference Commerce drew against the GOI was that India's domestic market for natural gas is distorted, rendering tier-one domestic benchmarks unavailable and displacing the regulatory preference for in-country pricing under 19 U.S.C. § 1677(5)(E) and 19 C.F.R. § 351.511(a)(2)(i). *See* IDM at 43, 46-47; PDM at 9-10. That finding is adverse to the GOI regardless of the benchmark's ultimate result. The statute does not require Commerce to estimate what the subsidy rate "would have been" absent noncooperation. 19 U.S.C. § 1677e(d)(3)(A).

It is also settled practice that Commerce may rely on a cooperating respondent's own verified data to measure benefit, even when it applies AFA to a foreign government. *See* IDM at 44 (citing *Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 14,463 (Dep't Commerce Mar. 12, 2020), at IDM Cmt. 2); *see also Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1371-73 (Fed. Cir. 2014); *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (Ct. Int'l Trade 2013) ("Commerce should seek to avoid such {adverse impact on a cooperating respondent} if relevant information exists elsewhere on the record."). Here, Win-Tel and Antiqa cooperated fully, and their August 2024 benchmark submission (P.R. 528-31) provided the UN Comtrade data that Commerce ultimately adopted. *See* IDM at 8-9, 44-45.

Commerce's selection of UN Comtrade gaseous natural gas data over Plaintiff's proposed alternative based on a "Global LNG Market: Supply-Demand and Economic Analysis" report (Pl. Br. at 41; P.R. 599) also reflects the fundamental interest in accuracy. *See Rhone Poulenc*, 899 F.2d at 1191 (noting basic purpose of "determining current margins as accurately as possible").

Win-Tel and Antiqa purchase natural gas in gaseous form: ***they do not purchase LNG***. *See* PDM at 9-10, 17; IDM at 42-43, 47. Commerce thus determined that "the most appropriate proxy for a market-based benchmark for natural gas in a gaseous state to apply under tier three is the world export price data sourced from UN Comtrade." PDM at 18. A benchmark based on a different physical commodity—LNG, which must be "regasified" and trades on distinct global markets—would bear no meaningful relationship to respondents' actual purchase transactions.

Nor does the fact that Commerce applied AFA to the GOI excuse Commerce from following its regulatory benchmark methodology. As Commerce explained, it "cannot dismiss the methodology described in 19 C.F.R. § 351.511(a)(2) to identify the appropriate market-determined benchmark for measuring the adequacy of remuneration for a government-provided good because {Commerce} applied AFA to a non-cooperative government." IDM at 45. Commerce accordingly applied its ordinary three-tier benchmark hierarchy, by assessing tier-one domestic prices, then tier-two world prices, then tier-three market-principles pricing, notwithstanding the adverse inference against the GOI. *Id.*; PDM at 9-10, 17-19. Plaintiff's suggestion that AFA should have displaced this settled methodology entirely finds no support in the statute or Commerce's regulations. *See* Pl. Br. at 40; *cf. Changzhou Trina Solar Energy Co. v. United States*, 195 F. Supp. 3d 1334, 1350 (Ct. Int'l Trade 2016) ("Although Commerce reasonably invoked its authority under 19 U.S.C. § 1677e to use facts otherwise available . . . the agency must still make the necessary factual findings to satisfy the requirements for countervailability.").

### B. Plaintiff's Remaining Benchmark Objections Do Not Warrant Remand

Plaintiff raises two technical objections to Commerce's application of the UN Comtrade data: (i) an alleged inconsistency in the KG-to-SCM (standard cubic meter) conversion factor; and (ii) the inclusion of data from Georgia, Kyrgyzstan, Tajikistan, and Moldova, while excluding China and Russia. *See* Pl. Br. at 41-42. Neither warrants remand.

As to the conversion factor, Commerce determined this was a methodological decision, not a ministerial error. *See* Ministerial Error Memorandum at 3 (P.R. 745); *Alloy Piping Products, Inc. v. United States*, 201 F. Supp. 2d 1267, 1284 (Ct. Int'l Trade 2002) (discussing ministerial error definition). Critically, Commerce adopted the methodology at Plaintiff's own suggestion. In its administrative case brief, Plaintiff urged Commerce to apply "{a} kg to cubic meter conversion factor" as a "readily available basis for converting all the kg-based quantities to cubic meters and calculating the benchmark price from those converted values," stating that "{Commerce} should do so; doing so results in a more credible benchmark price." Petitioner's Case Brief at 21 (P.R. 704; C.R. 543); *see also* IDM at 45. Having invited Commerce to adopt this methodology, Plaintiff cannot now complain that Commerce accepted its recommendation.

Plaintiff's complaint appears to be that certain data ***already reported*** in SCM should be further converted along with Commerce's conversion of figures in KG to SCM. Commerce thoroughly explained why this was not an error—ministerial or otherwise. *See* Ministerial Error Memorandum at 2-4 (P.R. 745). Moreover, the verification record confirms the reliability of Commerce's conversion KG-to-SCM methodology. Commerce verified that "the mandatory respondents recorded natural gas purchases on a SCM basis in their accounts," and was able to "tie the tax invoice, accounting entries, and the bank statement demonstrating payment to record information without error." IDM at 45 (citing Antiqa Verification Report at Ex. VE-20 (P.R. 692; C.R. 539); Win-Tel Verification Report at Exs. VE–19-20 (P.R. 693; C.R. 540)). This verified tie between respondents' accounting records and the benchmark data confirms that Commerce's SCM conversion methodology was not an arbitrary or unsupported choice, but one grounded in confirmed, auditable record evidence.

Regarding the nonmarket economy country data, Plaintiff never raised this argument in its administrative case brief or ministerial error allegation. *See* Gov't Br. at 43 (citing Petitioner's Case Brief at 21 (addressing only Mexican data); Petitioner Ministerial Error Comments (P.R. 737) (lacking argument); Petitioner's Rebuttal Benchmark Comments at 3 (P.R. 599) (focusing on Russia and China data)). The argument is therefore forfeited for failure to exhaust administrative remedies because Commerce and the respondents did not receive an opportunity to address it before the agency. *See* 28 U.S.C. § 2637(d); *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912-13 (Fed. Cir. 2017); Section II.A, *supra*.

Finally, Plaintiff's comparison of this case to the determination in *Quartz Surface Products from India* is misplaced. *See* Pl. Br. at 40. Each Commerce proceeding is evaluated on its own administrative record. *See U.S. Steel*, 637 F. Supp. 2d at 1218. The respondents here submitted their own cooperative, verified benchmark data reflecting their actual natural gas purchases—record evidence that supports Commerce's determination in this investigation. The similar outcome in *QSPs from India* only underscores that Commerce here acted consistently with its past practice. *See Certain Quartz Surface Products from India: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 85 Fed. Reg. 25,398 (Dep't Commerce May 1, 2020), at IDM Cmt. 3.

Indeed, Commerce's no-benefit finding is consistent with the broader principle that a zero subsidy margin is a common, non-punitive outcome when AFA is applied against a non-cooperating government in a CVD proceeding rather than against the respondents themselves. As Defendant-Intervenors explained, "government noncooperation need not result in a positive subsidy margin" because "in the context of measuring benefit for a LTAR subsidy program{}" zero subsidy margins "are commonplace." Rebuttal Brief at vii, 4-10 (P.R. 719; C.R. 544)

(extensively refuting Plaintiff's claims). Rather than exposing an aberration warranting remand, this consistency confirms that Commerce applies AFA against a noncooperative government in an appropriate matter—not to manufacture a punitive result against cooperating respondents.

## VI. Commerce Lawfully Declined to Investigate the Alleged Minerals for LTAR Program

Commerce's determination and the Government's response brief thoroughly explain why Plaintiff's late "Minerals for LTAR" initiation request did not qualify as an upstream subsidy allegation warranting investigation. *See* Gov't Br. at 44-46; IDM Cmt. 11; NSA Memo at 3-6 (P.R. 691; C.R. 538). Defendant-Intervenors highlight record support for this finding.

Respondents in December 2024 filed comments detailing why Petitioner's "conclusory statements" that were devoid of "sufficient evidence" failed to satisfy the upstream subsidy regulatory criteria under 19 C.F.R. § 351.523(a)(1), while also referencing Commerce practice rejecting such insufficient allegations. *See* Comments on Upstream Subsidy Allegations at 3-6 (Dec. 4, 2024) (P.R. 665; C.R. 457). Respondents further explained that the submission did "not contain any new factual information." *Id.* at 1. Petitioner in response requested that Commerce reject Respondents' response on the inapposite grounds that it exceeded Commerce's deadline for new factual information, and otherwise disclaimed an obligation to address the upstream subsidy criteria with sufficient evidence. *See* Petitioner's Letter at 2-4 (Dec. 9, 2024) (P.R. 667).

When Commerce nonetheless requested that the regulatory criteria be addressed, Petitioner proffered paltry support and maintained that it "was unable to identify with greater specificity the individual raw material input transactions at issue." Petitioner's Upstream Subsidy Allegations SQR at 2-8 (Jan. 2, 2025) (P.R. 682; C.R. 531). Ultimately, Respondents explained that "Petitioner's Case Brief persist{ed} with the misunderstanding that an ordinary direct subsidy allegation can be brought late in the investigation as an upstream subsidy, without even attempting

to demonstrate how Respondent' input suppliers were allegedly subsidized through the provision of minerals at LTAR." Rebuttal Brief at 54 (P.R. 719; C.R. 544). Consequently, Commerce's refusal to initiate on the upstream subsidy allegation was well supported by the record.

**CONCLUSION**

For these reasons, Plaintiff's motion for judgment on the agency record should be denied and judgment should be entered in favor of Defendant and Defendant-Intervenors.

Respectfully submitted,

/s/ Jordan C. Kahn
JORDAN C. KAHN

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

1201 New York Ave., NW, Ste. 650
Washington, DC 20005
Phone: (202) 783-6881

*Counsel to Defendant-Intervenors Win-Tel Ceramics Private Ltd and Antiqa Minerals*

/s/ Joshua E. Kurland
JOSHUA E. KURLAND
JONATHAN T. STOEL
LINDSAY K. BROWN

HOGAN LOVELLS
CADWALADER US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: Joshua.kurland@hoganlovells.com

*Counsel to Defendant-Intervenor
M S International, Inc.*

Dated: August 14, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure section 2(B)(1), I hereby certify that this Response Brief complies with the word-count limitation requirement and contains 10.407 words, including an embedded graphic having 33 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the Response Brief.

/s/ Jordan C. Kahn
JORDAN C. KAHN

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

1201 New York Ave., NW, Ste. 650
Washington, DC 20005
Phone: (202) 783-6881

*Counsel to Defendant-Intervenors Win-Tel Ceramics Private Ltd and Antiqa Minerals*

Dated: August 14, 2026